257055. Please proceed. Good morning, Your Honors. May it please the Court. Nicole Heron, appearing on behalf of Douglas Lollis. The question for this Court is whether the District Court fulfilled its independent duty to clear away jury confusion about a legal question with concrete accuracy. The record in this case shows that the jury was confused about the meaning of possession in a case charging Mr. Lollis with possession of a firearm. Mid-deliberation, the jury sent a note revealing genuine confusion about how to define possession on the firearm possession count. The jury asked whether it was permitted to assume possession based on Mr. Lollis living in the same household as a person who purchased the firearm. So why isn't this a factual question? Let me ask you a predicate question. Do you agree that if the jury asks a factual question, there's no ball and block duty? Yes, I agree. This was not a factual question. So the question assume means that the jury already made the factual finding themselves. They were asking the court what they were permitted to do with that factual finding. There is no way that this question was not a legal question that the court was required to answer. But could you help me then? What is the factual question that they had already answered in your view? So the jury already made the determination that there was cohabitation between Mr. Lollis and I think Amanda Chandler, his girlfriend. She was the one who originally purchased the firearm. So the question was not asking the court to tell them whether Mr. Lollis lived there. They were asking what the law permitted to do with that conclusion that they came up with on their own. Well, that was not raised by either side and was not really an issue in the case. We have a case here where the guy walked in, took the gun out of his pocket, put it on the counter. Is that possession or not? Is that? Yes. Go ahead. Yes. Yes, I agree with your honor. There was a lot of evidence of actual possession in the record and that's what made this error so harmful. It was clear that the jury rejected that evidence. They asked this question after two hours of deliberation. They were deadlocked on count one. They had already reached a verdict on count two, which was an on those same witnesses testimony. There was absolutely no reason for them to ask this question if they weren't confused about the definition of possession and they were considering an alternative legal theory. But doesn't there have to be some evidence from which the jury could have made this factual assumption or inference? I don't think so. There was evidence in the record of joint occupancy. I think a lot of people missed it. And I think what happened is the jury went back to the jury deliberation room and they believed the defense. Our entire defense was that these witnesses weren't telling the truth, that he was never in the pawn shop. So they studied the exhibits. They were trying to figure out if there was another way that they could convict other than actual possession because they didn't believe these witnesses. And whenever they were, can we take apart your, you said two things. I want to make sure I understand your, your answer. You said that the, the inference that the jury drew about the cohabitation, there needs to be no evidence to support that in, in, in, in the record. They can just, they can just make that up if they want to. Well, I think that, um, Bolenbach says whenever a jury is confused and there is a legal answer for their question, the court has a concrete duty to clear away the jury confusion with concrete accuracy. So I don't think the court is, uh, supposed to try to figure out why the jury came up to this, up with this factual finding. The court has a duty to clear away the confusion, regardless of whether it agrees with that factual finding by the jury or whether it thinks that it's sufficient. Well, I mean, help me how that can be. So, I mean, if, if the jury draws a totally unreasonable inference from the trial evidence, no, you know, completely unsupported, um, and then asks a legal question about their assumption, Bolenbach duty. Uh, maybe, um, in this case though, there was evidence in the record. What is the evidence exactly that would have supported the inference about cohabitation? So they were studying these pond slips and these pond slips had addresses that were very, very similar. Um, but they weren't the same. There were, there was the same address for Mr. Lawless's mother and his girlfriend. And I think the jury may have reasonably assumed that Mr. Lawless would not move his girlfriend in with his mom without also living there. Also the address that was listed for Mr. Lawless was very, very similar. It was the same street. The numbers were different, but they were flip-flopped. They, so they were reversed. It looked like it was something the jury, that's what the jury was considering. It was very close and it was reasonable for them to, to assume that maybe this is what happened, especially since they asked the question. So, uh, counsel, whenever the jury, um, asked the question, counsel asked for the jury to be instructed no. The court refused to give that answer and instead just repeated the beyond a reasonable doubt standard. That was insufficient under the court's Ballenbach duty to clear away jury confusion. So, um, the, the court had already told the jury that the government had the burden to prove beyond a reasonable doubt seven times. So repeating the burden of proof in no way helped the jury in this case. And it's a real problem because there's a real risk that Mr. Lawless was convicted on an incorrect legal basis. The jury wasn't ever given the definition of possession. It was never in the original jury instructions. So they were free to make up this definition on their own. They needed help from the court. They needed to know whether joint occupancy could establish possession and they were never told that. Well, what should have, uh, the district court have said? I think no would have been fine. I think no was the correct answer because a jury can never assume anything. And particularly in this case, whenever there was no evidence of construct, um, constructive possession, then no was the correct answer. If the court didn't want to answer no, for some reason, because it was concerned about it answering a factual question, then the court could have answered it any other way. So the Ballenbach duty is just to clear away the jury's confusion. The court could have given the instruction if that was its concern. But in this case, our position is that no was the correct response. And we asked the court to, to answer the question. We told the court that it had a duty to answer the question and the court disagreed. Um, the court said that I disagree that whenever you can answer a legal question, you should, and then proceeded to instruct on the burden of proof. So the note itself is proof that the error was not harmless. So we know that the jury standard of, of harmlessness. Well, how, how do we assess harmlessness? So harmlessness is the, it's the government's burden to prove that the error was harmless. And, um, the government agrees that harmlessness, uh, that they have to prove beyond a reasonable doubt and the government is correct. And, um, our position is this is a constitutional error. This is a violation of due process for, um, Mr. Lawless to be convicted on an element, on an element that the jury, um, didn't find. If this court disagrees, the government still cannot prove that this was harmless by preponderance of the evidence. So the other thing the court can consider, um, this, this was not harmless because of his, um, acquittal on count two, the jury was looking at all of this evidence. They were doubting these witnesses testimony. They came to a quick acquittal on count two. They had questions about actual possession. Our entire defense was that he didn't possess this firearm. So there is a real risk, a real possibility, and a real problem with the court failing to, to answer the jury's question. Was the evidence underlying both counts the same? Uh, it was similar in that both, it relied on both witnesses testimony. So the witnesses testified, both witnesses testified that they saw Mr. Lawless come into the pawn store and pull a firearm out of his waistband. And then another witness, um, testified that she saw him fill out the form and sign it indicating that he, um, was not a felon. And so it did rest on those same witnesses testimony. And that, that is a problem. So the case law is clear that when a jury makes explicit its difficulties, the trial judge should clear them away with concrete accuracy. And it's, it's to be really precise about it. It's difficulties about a legal rule, right? Yes. And this was a legal role. They did not have the definition of possession in front of them. They had no idea what they could do with the conclusion that they made that they were Mr. Lawless looked with his girlfriend. So they needed to know what they could do with that. They needed to know whether they could convict on this alternative legal theory. So the district court said in its post trial order that the assumption that the jury made that about cohabitation was there, there was no such evidence introduced to support that assumption. Is it your position that that's a clearly erroneous finding? I mean, my struggle in this case is that in order for us to say that the jury's confusion was reasonable, there probably needed to be some evidence that supported their inference of cohabitation. So there was evidence in the record and those were those consulates, but the district court can't avoid its duty to answer legal questions, whether it disagrees with the jury's factual findings or not. So the jury, the jury is the finder of fact, not the judge. So when the jury indicated that it was considering cohabitation from the evidence before it, the court had a duty to tell them what it was permitted to do with that conclusion. So it's not whether there's sufficient evidence. There was some evidence. There was some evidence in the record that made the jury ask this question and the court had a duty to tell the jury what they were able to do with that conclusion that they made. The jury is able to hear the evidence and the jury is the we think that the court was wrong in that finding. Well, counsel, so is it your position though, that the pond slips were the only evidence that possibly would lead to cohabitation finding? Is there anything else or is it just the pond slips? There were the pond slips and I believe the 4473 form. So those were with that say, I believe that's that listed an address as well. And, um, I'm not sure which one it was about, but yes, the pond slips and the 4473. Okay. And if the court has no further questions right now, I'd like to reserve. You may. Thank you. Good morning, may it please the court. My name is Jared Lehman. I represent the United States. Your honor, I want to go straight to your question about the timeline, the documents that represent the addresses in this case. And for the record, I'm going to be citing to the supplemental record, which is, I believe it document 33 on the, in the appellate version of the documents, not the district court documents. Amanda Chandler purchases the firearm identified in the indictment on April 7th of 2021. And that is a 4473 firearm transaction form. We've seen a million of them and she lists her address as one zero two nine five eight. The next thing that happens as far as the trial exhibits goes is going to be the defendant pawns the firearm. And that occurs on December 22nd of 2022. And the defendant lists a different address. Admittedly, they are different, but there's no indication that they're living in the same house with that. It's a completely different address. Completely different, right? I mean, it's, it's an inverted number. It is, but there could be a very logical reason for that. It could be they're all in the same street or, or what have you, um, that, that just didn't come into the case because nobody was thinking about. But why would it be, uh, unreasonable just from those, uh, from those addresses, the inverted addresses for a jury to reasonably infer, um, Oh, they, they, this is the same address. It's just a typo. And so I guess they were living together. I mean, why is that an unreasonable assumption here that would then form the basis for this legal question? If it were one document, perhaps, but it's not, it happens again. So 1222 22, the defendant represents the different address. Uh, so about 18 months later after the purchase, the defendant, uh, goes to retrieve the pawn and fills out a 44 73. And this is on March 8th of 2023. And again, lists a different address. Uh, so it's two different times that the defendant is representing himself at a different address other than his girlfriend who purchased the firearm. The only thing that ever links the defendant to that specific address one Oh two nine five eight is his mother makes some representations on different, um, pawn payments, uh, and her 44 73 that she lives at that address. But just because my mother lives with someone who may be my girlfriend doesn't mean that I live at that address. I mean, that's totally true, but why is it an unreasonable inference for a jury to draw, especially given what we know from, uh, the acquittal count, how they were looking at this case? I think the acquittal count, when I go over defendants closing statement, uh, the defendant really makes a lot of hay with the discrepancy in the signatures on the various documents in the case. And the defendant really made that the cornerstone of his presentation to the jury for acquittal. And I think the jury probably took that to heart. I'm, I'm, I'm having to read between the lines here, but that's really what it seems to me is the 44 73 is maybe just didn't look right. And the defense and defense counsel at trial certainly did an outstanding job of pointing that out to the jury. So I think that's probably what the lion by the 44 73 charge. I think that's what resulted from the acquittal, but as far as a reasonable leap, I don't think the evidence can support even a reasonable inference that the defendant cohabitated with his girlfriend. She's using a different address. I'll be a similar defendant, two different times represents that he's using a different address to defend his mother. Yes, she does represent, she lives there, but that doesn't mean he did. Um, so I, I just, I don't think that we can get that reasonable inference in the case. But well, let's, let's assume we, we disagree with you that there is certainly not a lot of evidence. Uh, the case isn't about constructive possession, so we wouldn't expect to see a lot of evidence. Uh, but from the limited evidence, the jury could draw this inference and that formed the basis for their legal question. Do you agree that the court had a bull and buck duty under those circumstances? No, your Honor, I don't. Because if the, if the court is going to answer that question, it is going to inadvertently step on factual findings that the jury has made. If the court says no, as the defense counsel suggested a trial, what is the court saying no to? Because it's kind of a compound question. Is the court saying, no, you can't assume anything or is the court saying, no, they, the defendant didn't live with his mother. And that creates a really big problem. Uh, the jury was instructed, um, on evidence, direct and circumstantial, you're permitted to draw reasonable inferences. Reasonable inferences, we all recognize that from law school. We live and breathe by the term reasonable. Um, I think it's a very logical thing for a, a lay jury to ask, you know, can we assume something versus reasonable inference? Uh, and so the judge would be directly stepping on the jury's provinces fact finder by saying no. So I, I don't think he can do that. Well, help me understand that in light of your response, how this case is different from Kirby. I mean, Kirby, uh, also had some implied facts that formed the predicate for the legal question about, you know, when sedating under the influence, does it mean it's in his system? I mean, it's so we, we held in that case that the district court had a bowl and Bach duty to respond, right? Your honor. I read Kirby's jury question through the prism of, of being an attorney as, is it a strict liability offense or does the defendant have to be actually impaired by the intoxicants? And so I think that actually is a legal question. Hey, do we have a strict liability situation where mere presence of in my body is enough to convict or do I have to actually be impaired by those? And I think that really is a legal question. This is a fact question. Uh, and even if it's not, it's so involved in the jury's findings of facts that anything that the court would have done would have stepped on those. And so I think the court actually did a very, very bright thing. Um, it told the jury that the government had to prove its case beyond a reasonable doubt as a litigator. I don't like the jury assuming something that really, I think probably causes us all a lot of heartburn, but nonetheless, uh, the court reminded the jury of its obligation of the government's obligation to prove its case beyond a reasonable doubt. And I think that gave the jury everything that it needed. Uh, so I, I think that that perhaps was the right thing for the court to have done. Well, I just want to press you a little bit on Kirby because I, I'm, I'm really having trouble reconciling the jury note there and our holding and Kirby with, with what is the course of, you know, appropriate course of action here because the, the jury note there, I mean, it, it said in his system and this says, you know, uh, defendant living in the same house. I mean, it just, it has the same sort of parallel factual hook. I just don't see why we would have understood a duty to arise in Kirby given that the question was framed based on some facts. And we say a duty arises here where the question legal, the question about the legal rule is based on some facts. I think that comes from the second half of the jury question in Kirby. Um, and I, and I from memory, I think the second half says, does it have to affect him? Um, and that's the legal question in the jury note. And that's an element of the crime. The defendant has to be affected by the intoxicants living in the same house as, uh, a person who purchased a firearm 18 months ago, isn't a element of the offense. It's not, it's not a legal question where he may have lived. It's a factual question of, can we draw inferences from that? Uh, or can we make this inference or can we find this fact? That's what the, the jury is in effect asking the court. But isn't that precisely why the court had to answer the question in this case is about possession. And there's a clear answer to, to the, to the, to the question that it posed that's to the government's theory of a liability in this case. I think it's too much of a third rail because it goes into, it dives into commenting on the facts that the jury is finding. And I don't think that's something that district court can do. Um, because if it says no, what is it saying? No to I, I, so I just, I think that the jury itself presented too much of a factual issue, uh, to the court for, to answer any way other than what it did. Um, I want to address one thing that the appellant's counsel mentioned, uh, and that is they were not possessed or they were not instructed on possession. I do want to underscore for this court, however, that they were, the jury was instructed on knowingly and knowingly possessed. And the court defined that, and I'm citing to the record at volume one, one 49, uh, an act done voluntarily and intentionally and not because of mistake. So they did have a pretty substantial instruction on what it was possession of what they were looking to find. So I think the jury was adequately instructed on knowing possession. So they had that, they had the other instruction, um, evidence, direction, circumstantial, you're allowed to make reasonable inferences. And they were also given the instruction of consider only the crime charged. The defendant was not on trial for anything outside of the indictment was the instruction that they had. So when we look at the instructions as a whole, I think they have everything that they need to make a determination. They just happened to ask a question, the question, isn't it? Why did they ask the question if they had every, they obviously felt they didn't because they asked the question. Yeah. And your honor, regrettably, it just contained facts in it. Interestingly enough, there's a way, I think to read this question, um, they use the word possession and as lawyers, we all immediately get after that. Okay. We, we know what that means. We've been fighting with this word for years. Ever since we were law students, it's, it's one of the most important things that we can do. But sometimes I think lay persons confuse possession with ownership and maybe that was what they were getting said possession quotes. I mean, so it's, you're, you're probably, uh, discerning how I'm feeling about this, but I, I don't, um, I'd like to get some more support for your position that because a jury question that has, uh, a legal rule can kind of a confusion about a legal rule that, that because it has facts in it, that somehow takes it out of the scope of Bolenbach because I don't see that in any of the cases. If we look at Kirby and Zimmerman, we look at itself, there's always some sort of factual predicate. And so what that brings into my mind is what's the basis for that factual predicate? Is it just the jury sort of, you know, hallucinating or is it based on something in the evidence from which they could have drawn a reasonable inference and then been confused about a legal rule? I'm not aware of a, of a case directly on point, your honor. I certainly couldn't find one. Um, but I've, uh, of the cases in which an appellate court has reversed, I've never seen one that is this factually intensive. And I, and, and I don't know a way, you know, keep going back to what was the district court supposed to have done without trampling on the jury's, um, exclusive province of fact-finding and anything that it would have done, I think really would have, um, stymied that the jury's province. Interestingly enough, I, and perhaps we're getting to harmless error here, but interestingly enough, if the court had instructed on constructive possession, given the evidence in this case, I still think the jury returns a verdict of guilty. Uh, I think that a constructive possession instruction enhances the government's case. So for example, let's just take the jury at its word that it found that the defendant cohabitated with his firearm. So as far as constructive possession goes, we have cohabitation in the house where the firearm is at. Presumably he knows that it's there. We have the defendant bringing it to a pawn shop and pulling it out of his hands and trying to pawn it. We have the defendant, um, making payments on it. We have the defendant trying to redeem the pawn. And when that goes South, we have the defendant sending his mother, uh, to go pick it up for him. So clearly the defendant can exercise dominion and control over this item. Well, I'm, I'm a little confused about where your harmlessness analysis proceeds from. I mean, what you just recited would assume that the error is failing to instruct. I mean, how is it harmless if the error is not abiding the Bolenbach duty? Well, so if the, if the court had given that instruction, they would have returned the same verdict. So they would know if the, if the, if the, if the court had just said in response to the question, what defense council had suggested the answer is no. Right. So assuming that that didn't trample on the jury's Providence's fact finder, if the court had said no, I think you still get the same, um, you still get the same verdict. I'm trying to go through the harmless error standard in my head, but I think it's no rational jury, uh, could have decided the way, uh, or it's no rational jury, I believe is, is the standard below that. What's not, isn't, I thought you, your position was harmlessness beyond a reasonable doubt, right? Yes, Your Honor. That's correct. But going into how do we determine that it's, um, rational jury, given the evidence of this case, I think every rational jury would have returned a guilty verdict. Uh, the defendant pulled the gun out of his pants and set it on the counter and pondered and then signed, you know, signed documents saying this is mine and I'm trying to pawn it. And then later signed a document saying, I'm here to redeem it. Regardless of the, the sufficiency of those documents for a lying by count, uh, nonetheless, two eyewitnesses saw the defendant pulled the gun out of his pants, put it on the counter. So I think every rational jury would return a conviction in this case. And so that's where I think the harmlessness comes in, Your Honor. But your harmlessness argument avoids the effect of the error. I mean, the error here is that if the, if the jury was confused about possession, thought you could convict because of constructive possession, how is that harmless? Uh, beyond a reasonable doubt. If the court said no, what does the jury do with that? I think is really what we have to get at. And you just can't know what you can't know, unfortunately. Um, and I think that's where we have to defer to the weight of the evidence in this case and a rational jury. So the court says no. Well, they go back and deliberate. Um, and they come, they reread the instructions, they look at knowingly, uh, and they look at consider the crime charge in the evidence and they come up with, you know what he did pull the gun out of his pants. We're a little concerned about the documents you may have filled out. So I think that's, uh, I think we end up in the same place with a guilty verdict on count one. Okay. Well, if there's nothing further, your honor, I will ask the court to affirm the defendant's conviction and sentence. Thank you. The government seems to be equating sufficiency of the evidence with harmlessness and sufficiency of the evidence is not the question before this court on harmless error. The question is whether the jury's confusion about the definition of possession explains the verdict and assuming the jury was confused and the note proves that they were, the question is whether the court dispelled the confusion. And if not, whether the confusion contributed to the verdict, the strength of the eyewitness evidence actually makes the note more significant. It proves that some jurors were not accepting that evidence and they're looking for an alternative path to conviction. And the alternative path was legally invalid. The jury didn't believe those witnesses beyond a reasonable doubt. If they did, they wouldn't have sent the note. They wouldn't have. So does that explain, I I'm sorry, you're suggesting it doesn't matter that there was evidence that the defendant pulled the firearm out, put it on the table because that testimony was not credible. Is that your position? Yes. Or the jury was discounting it. Yes, that's correct. The jury didn't believe that testimony or they wouldn't have sent the note. So it doesn't matter that that witnesses testified that they saw him pull a firearm out of his waistband. In fact, that makes this error more harmful because the jury was it's clear that the jury was rejecting that testimony. They had that evidence right in front of them. And they still ask this question. Counsel, why is it clear? Why is it clear that the jury rejected that testimony in the incontrovertible testimony? The note is evidence that they rejected it. They wouldn't have sent the note if they believed those if one juror had a question and the other jurors said, OK, we'll write a note. Does that suggest anything about what the rest of the jury was thinking? I see I'm out of time. May I answer the court's question? Yes. So it doesn't matter if it was just one juror that was confused. Well, you don't know, Mr. We don't know, but we know that there was at least one juror that was questioning these witnesses testimony. In fact, it looks like all of them questioned the witness testimony based on the acquittal on count two. So and Mr. is entitled to be convicted by a new ministry. Your time has expired. Thank you. Thank you, counsel, for your helpful arguments. The case is submitted.